# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:08CV354-DSC

| | | |
|---|---|---|
| ARLEEN F. BROOKS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the "Plaintiff's Motion for Summary Judgment" (document #13) and "Brief Supporting ... " (document #14), both filed March 9, 2009; and the Defendant's "Motion for Summary Judgment" (document #15) and "Memorandum in Support of the Commissioner's Decision" (document #16), both filed May 7, 2009. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On October 26, 2004, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging she was unable to work since November 26, 1998 due to epileptic seizures (Tr. 75-

76, 94). Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff filed a timely Request for Hearing, and on December 20, 2007 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated February 12, 2008, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff suffered from a "seizure disorder" which was a severe impairment within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff had no past relevant work; that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform work at the sedentary and light[2] exertional levels limited to "simple, routine, repetitive tasks in a non-production setting at low stress levels with no climbing, balancing, exposure to unprotected heights or moving machinery and no driving"; that Plaintiff should avoid exposure to temperature extremes; that Plaintiff's ability to concentrate "might be somewhat hampered from the effects of her medication"; and that, consequently, she could perform only unskilled or semiskilled work. (Tr. 14-19). Finally, the ALJ found that considering Plaintiff's RFC together with her age, education and past work experience, the Medical-Vocational Guidelines indicate that there were jobs existing in significant numbers in the national economy that Plaintiff

---

[1]The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

could perform and therefore she was not disabled.  (Tr. 19-20).

By notice dated July 10, 2008, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on July 31, 2008.  On appeal, Plaintiff contends that the ALJ "fail[ed] to analyze all of the evidence of record," specifically, "evidence of Plaintiff's symptoms of confusion." Plaintiff's "Brief Supporting " at 2 and 5 (document #14).  The parties' cross-motions for summary judgment are ripe for disposition.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990);  see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986);  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979);  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986),  quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means

3

such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the

evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at

1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483

F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as

there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker,

683 F.2d 838, 841 (4th Cir. 1982).


## III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time Plaintiff became "disabled" as that term

is defined for Social Security purposes.[3]   At the outset, the undersigned notes that no physician has

opined that Plaintiff is disabled.  To the contrary, the medical record supports the ALJ's essential

conclusion that Plaintiff suffered from, but was not disabled by, her seizure disorder.

Plaintiff argues that one piece of medical evidence in the record, an April 30, 2002 brain

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical
> or mental impairment which can be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

scan, was not adequately considered by the ALJ with respect to her allegations of confusion. In his decision, however, the ALJ clearly noted the brain scan (Tr. 16). He stated, consistent with the evidence, that the scan showed signs of cerebellar atrophy that were stable since a prior study five years earlier in 1997 (Tr. 16, 235). Further, the ALJ went on to document the medical evidence in the record from numerous physicians who did not indicate the level of severity which Plaintiff alleges with respect to her symptoms of confusion (Tr. 16-17).

The ALJ addressed Plaintiff's treatment at the CMC Myers Park MS Center by several neurologists from September 2001 through December 2007 (Tr. 16-17, 176-230, 236-265). He reasonably found that such records did not support Plaintiff's allegations. Significantly, Plaintiff cites nothing in these records, much less any findings that would indicate significant symptoms of confusion. Instead, the records reveal, as found by the ALJ, that Plaintiff's seizure activity was controlled with no reports of seizures since the date of Plaintiff's application, October 26, 2004 (Tr. 218-225, 236, 244-245).

In December 2004, Dr. Kenneth Shauger completed a neurological examination of Plaintiff (Tr. 218-220). He noted that Plaintiff was oriented with good recent and remote memory, good attention span, and appropriate fund of knowledge (Tr. 218). Plaintiff also had a normal motor exam, no tremors, appropriate gait and station, and good coordination (Tr. 219). Her sensory examination was grossly intact (Tr. 219). Dr. Shauger assessed Plaintiff with a stable seizure disorder and advised her to follow-up in one year (Tr. 220).

A subsequent neurological review by Dr. Shauger on August 18, 2005 revealed Plaintiff's cranial nerves to be intact with no pathologic nystagmus, minimal if any tremor, no dysmetria, no weakness, no incoordination, and no ataxia (Tr. 236). While Plaintiff noted that she had chronic

headaches, Dr. Shauger stated that Depakote was given to help combat the problem and that Plaintiff's headaches were stable (Tr. 236). There was no report or findings of any symptoms of confusion (Tr. 236). Another review on June 21, 2006 revealed no headaches and only mild dizziness (Tr. 244). The examination revealed Plaintiff to be alert and oriented with fluent speech, intact cranial nerves, normal strength, symmetric reflexes, intact gait, and no tremors or other abnormal movements (Tr. 245). Plaintiff's sensory examination was also normal (Tr. 245). No symptoms of confusion were reported or noted (Tr. 244-245).

On May 16, 2007, Dr. Shauger noted that Plaintiff had not been seen in one year and had not had any seizures during that time (Tr. 256). He stated that it had been three to four years since she had experienced a seizure (Tr. 256). A neurologic examination revealed unremarkable mental status, no cranial nerve deficits, normal strength, normal coordination, minimal if any tremor, and normal writing and spiral drawing (Tr. 257). Dr. Shauger noted that Plaintiff's epilepsy was stable (Tr. 257). Again, he did not note, nor did Plaintiff report, any symptoms of confusion (Tr. 256-257). Subsequent notations indicate neurological and psychological findings to be within normal limits (Tr. 258, 263, 265).

In addition to her treatment at the CMC Myers Park MS Center, Plaintiff underwent a consultative examination with Dr. Glenn Baumblatt on January 25, 2005 (Tr. 231-234). Plaintiff reported that she had an epileptic history since her teens (Tr. 231). She reported that after a seizure she is tired and confused, but noted that she had not had a seizure in two years (Tr. 231). A neurological examination did not reveal any significant abnormalities (Tr. 232). Overall, Dr. Baumblatt concluded that Plaintiff had the ability to sit, stand, move about, lift, carry, handle objects, hear, speak, and travel adequately (Tr. 232). He noted that Plaintiff had not had a seizure for two

years (Tr. 232). Plaintiff's gait was normal and she was able to stand and walk on her heels and toes, and squat and rise (Tr. 232). While Plaintiff was not able to tandem walk very well, there was no medical necessity for a cane or other assistive devise for even minimal ambulation or balance (Tr. 232). Her muscle strength was 5/5 (normal) (Tr. 232). Nothing in the examination revealed any difficulty due to symptoms of confusion (Tr. 231-233).

The ALJ properly found that Plaintiff's seizure disorder did not limit her functional capacity beyond the limitation to work at no more than unskilled or semiskilled sedentary and light exertional levels limited to "simple, routine, repetitive tasks in a non-production setting at low stress levels with no climbing, balancing, exposure to unprotected heights or moving machinery and no driving" and that did not expose Plaintiff to temperature extremes. The record of Plaintiff's treatment for these conditions, discussed above and considered by the ALJ, supports that finding. Plaintiff has not indicated what additional limitations result from her seizure disorder or "confusion" that the ALJ failed to include in her RFC, nor has she suggested that the record indicates any additional limitations.

Plaintiff also argues that the ALJ failed to analyze her testimony and her sister's testimony concerning Plaintiff's symptoms of confusion. To the contrary, the ALJ's treatment of Plaintiff's allegations are further supported by his analysis of her testimony (Tr. 18-19). Here, the ALJ appropriately noted that Plaintiff's allegations of disabling symptoms were inconsistent with the medical evidence and her daily activities, which did not indicate such severity (Tr. 18-19).

As noted above, and as found by the ALJ, there is simply nothing in the medical record which indicates support for Plaintiff's allegations of disabling symptoms. The notations from Plaintiff's treating neurologist, Dr. Shauger, and the consultative examiner, Dr. Baumblatt, do not reveal any

functional restrictions beyond those found by the ALJ.

Although Plaintiff's sister testified that Plaintiff had difficulties with daily living due to confusion (Tr. 44-46), the ALJ found that Plaintiff completed a two-year college program, worked as a mail sorter without apparent difficulty, volunteered at a public library, and was active in a local college choir despite having a seizure disorder since she was young (Tr. 18, 28-29, 34-35). Plaintiff also collected recipes, attended church, sang in the choir, went grocery shopping with family, had a flower garden, walked around her neighborhood, washed dishes, straightened up her house, enjoyed reading, and visited with friends (Tr. 37-41, 49). See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) (holding that a claimant's daily activities were inconsistent with an inability to perform basic physical and mental work functions); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the pattern of claimant's daily activities suggested that he was not disabled from working). Given these activities, in addition to the medical evidence noted above, the ALJ properly determined that Plaintiff was not suffering from disabling symptoms.

In short, although the medical records establish that Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994), citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and ultimate determination that

Plaintiff was not disabled.

## IV.  <u>ORDER</u>

**NOW, THEREFORE, IT IS ORDERED:**

1.      "Plaintiff's Motion For Summary Judgment" (document #13) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #15) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2.      The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.


**SO ORDERED, ADJUDGED AND DECREED.**


Signed: May 8, 2009

David S. Cayer
United States Magistrate Judge